ATTORNEY GENERAL *vs.* THE C. E. OSGOOD COMPANY.

Suffolk.   January 10, 1924. — June 12, 1924.

Present: RUGG, C.J., DECOURCY, CROSBY, PIERCE, & WAIT, JJ.

*Insurance*, What constitutes.   *Sale*, Conditional.

A Massachusetts corporation, engaged in the business of selling household furniture on the instalment plan, included in a contract of conditional sale called a " lease " the following clause: " In case of the death of the person signing this lease before the whole amount of the lease is paid, we

will receipt the balance due us on this account in full, provided the person signing this agreement is the principal wage earner of the family, and provided all the payments have been made according to the terms agreed to in this contract; but it is distinctly understood that this agreement does not apply on any account of five hundred dollars or more." In an information by the Attorney General at the relation of the insurance commissioner under St. 1922, c. 417, § 1, to restrain the corporation from soliciting, making, or advertising relative to such contracts, it was *held*, that

(1) The consideration for the contract was single both for the personal property sold and the agreement as to cancellation of the debt in case of the customer's death;

(2) The quoted clause was part of the initial contract of the defendant with its customer, was supported by the consideration of that contract, and was binding upon the defendant;

(3) The clause respecting cancellation of the balance of the debt necessarily implied transfer of title to the property by the defendant to the estate of its customer on the death of the latter;

(4) The contract constituted insurance within the meaning of the statutory definition;

(5) Whether the quoted clause was ancillary to its chief business or was mainly for advertising ends, was not relevant in view of the absolute prohibition in G. L. c. 175, § 3, against the making of contracts for insurance except by companies and in the manner authorized by law;

(6) The statute was violated and the defendant should be enjoined.

INFORMATION, filed in the Superior Court on November 22, 1923, at the relation of the insurance commissioner under St. 1922, c. 417, § 1, to enjoin the defendant from making or negotiating, from soliciting, and from publishing any advertisements relative to the making of any contract or contracts of insurance.

There was an agreed statement of facts. Material facts are described in the opinion. The suit was reserved and reported by *Hammond*, J., for determination by this court upon the information, answer, and agreed statement of facts.

The case was submitted on briefs.

*J. R. Benton*, Attorney General, & *R. Clapp*, Assistant Attorney General, for the Commonwealth.

*J. A. Curtin*, *W. F. Poole*, & *A. S. Allen*, for the respondent.

RUGG, C.J. This is an information brought by the attorney general at the relation of the insurance commissioner under St. 1922, c. 417, § 1, to restrain the defendant from

violating the laws of this Commonwealth respecting insurance. The defendant is a domestic corporation and is engaged in Boston in the general business of selling household furniture, carpets and similar articles in large part on the instalment plan. That plan is to deliver the personal property which is the subject of the contract to its customer upon payment by him of a substantial sum of money and the execution of a lease whereby the customer has the right to the possession and use of that property provided he makes certain payments at definite times, title being retained by the corporation until all payments are made, when title to the property vests in the customer. The leases contain this clause: " In case of the death of the person signing this lease before the whole amount of the lease is paid, we will receipt the balance due us on this account in full, provided the person signing this agreement is the principal wage earner of the family, and provided all the payments have been made according to the terms agreed to in this contract; but it is distinctly understood that this agreement does not apply on any account of five hundred dollars or more." The meaning and effect of this clause is set out in the agreed facts as follows: " it is agreed that should the purchaser die during the pendency of said contract of lease, having made all the installment payments called for by the terms of said lease in the amounts and within the time specified in said lease, up to the time of the death of said purchaser, that at the time of the death of said purchaser all further payments due on account of said lease and unpaid at the time of the death of the purchaser shall be remitted, and the title to the merchandise shall immediately pass to the estate of the deceased purchaser without further payments, and C. E. Osgood Company will give a receipted bill to the estate of said purchaser, acknowledging payment in full for all merchandise mentioned and contained in the subject matter of the particular lease in question, the only limitation being however that this concession shall only be allowed on unpaid accounts up to five hundred dollars ($500)." This aspect of its business is featured in its advertisements in these words: " In Case of Death We Cancel Your Debt. Should

a purchaser of Osgood furniture die, we give a receipted bill on unpaid accounts up to $500, in accordance with our printed agreement at time of purchase." In numerous cases it has happened that persons holding such contracts have died before making payments in full and transfers of title to property have been in conformity to the quoted clause in the agreement.

The question to be decided is whether this so called lease constitutes a contract of insurance. A contract of insurance is defined by G. L. c. 175, § 2, to be " an agreement by which one party for a consideration promises to pay money or its equivalent, or to do an act valuable to the insured, upon the destruction, loss or injury of something in which the other party has an interest." This definition is intended to be comprehensive of all kinds of insurance, including life, fire, accident, fidelity, health, title, and liability, because it is the definition of the chapter in which all these varieties of insurance are regulated. This statutory definition does not differ in any essential from the common law definition. *Commonwealth* v. *Wetherbee*, 105 Mass. 149. *Claflin* v. *United States Credit System Co.* 165 Mass. 501.

It is manifest that the defendant does not receive so far as the face of its lease is concerned any particular sum of money for the part of the agreement which relates to the cancellation of the debt in case of the death of its customer. The consideration for the lease or contract appears to be single both for the personal property and the agreement as to cancellation of the debt in case of the customer's death. It is equally plain that the defendant is bound by the terms of its contract to cancel the balance of debt due it in case of the death of its customer, and to cause the title to personal property to vest in his estate. Its contract is not like an unsealed agreement to discharge an overdue debt on payment in cash of less than its full amount. The quoted clause of the lease is part of the defendant's initial contract with its customer, is supported by the consideration of that contract and is binding upon the defendant. The clause respecting cancellation of the balance of the debt necessarily implies transfer of title to the property by the defendant to the estate of its customer on the death of the latter.

This constitutes insurance within the meaning of the statutory definition. The cancellation of the debt is the equivalent of the payment of money to the estate of the customer. The transfer of title to the personal property delivered on lease is a right valuable to the customer. The cancellation of the debt and the transfer of title to the personal property spring out of the agreement and are in performance of its terms. The customer pays to the defendant the consideration for the doing of these things in the money handed to it as deposit and as the partial payments made from time to time. The cancellation of the debt and the transfer of the title to the personal property occur upon the death of the customer. That loss of his life is plainly something in which the customer has an interest. Every element of the statutory definition of insurance is present.

. Whether this clause in the contracts of the defendant is ancillary to its chief business or is mainly for advertising ends is not relevant in view of the absolute prohibition in G. L. c. 175, § 3, against the making of contracts for insurance except by companies and in the manner authorized by law. This prohibition is sweeping. It is not subject to exceptions. It is conceded that the defendant is not authorized to make contracts of insurance. Therefore it has violated the statute.

*Injunction to issue as prayed for, with costs.*